STATE of Tennessee, on Relation of the COMMISSIONER, DEPARTMENT OF TRANSPORTATION, for and on Behalf of Said Department, Petitioner–Appellee,

v.

Bruce HURLEY and Glenn Carroll, Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

June 21, 1995.

Application for Permission to Appeal Denied by the Supreme Court Oct. 30, 1995.

Phillip L. Boyd, Rogersville, for appellants.

Charles W. Burson, Attorney General and Reporter, and Cynthia L. Paduch, Assistant Attorney General, Knoxville, for State of Tennessee.

## OPINION

GODDARD, Presiding Judge.

Bruce Hurley and Glenn Carroll appeal a judgment rendered in their favor in a condemnation case which they believe is woefully inadequate. They contend that jury misconduct, improper closing argument by the State's counsel, and exclusion of certain evidence require a new trial.

Incident to the widening of U.S. Highway 11W, the State condemned 2.433 acres, which was part of a 21.19–acre tract owned by the Defendants. The witnesses for the landowners testified the value of the land taken was $39,570 and incidental damages to the re-maining 18.757 acres was $19,570. The only value witness for the State testified the value of the property taken was $2700 and that there were no incidental damages.

The jury found the value of the land taken was $2700, and that the Defendants' remaining property suffered no incidental damages.

As to the first issue regarding prejudice, it is the Defendants' insistence that the jurors by remaining silent when asked regarding the question on voir dire, improperly failed to reveal their prejudice as shown by the following affidavit of Juror Gerald Bernard:

Affiant states that from the beginning there were negative comments made in the course of the trial by jury regarding one of the landowners, Bruce Hurley. While there was no evidence offered in the course of the trial, it was discussed by at least one juror in the presence of other jurors that Bruce Hurley probably had prior knowledge of information regarding the condemnation of this property and sought to benefit from that prior knowledge by buying this property in order to gain an economic advantage which would result from a condemnation of the property.

Further, one juror made comments after the trial, indicating his recollection that the attorney for the State had argued that Bruce Hurley had tried to influence the officials at the Department of Transportation regarding the condemnation proceedings and the amount of money which was sought by Hurley and Carroll, using his position as a state representative. Even though the Court sustained the objection, the statement made by the State's attorney was not cured by the sustaining of the objection and more probably than not influenced the jury's decision.

It was also discussed that Bruce Hurley would have tried to influence the State officials in the amount of land being condemned and the amount of money being paid through his position as state representative even though this was not a matter of proof in the course of the trial. One of the jurors made a statement or statements that "everybody knows Bruce and how he is", implying that the landowner

Bruce Hurley would resort to improper tactics in the course of this condemnation suit to gain an advantage in the trial. There was no evidence of improper influence except the comment of the State's attorney, but the statement more probably than not influenced the jurors' decision in the course of deliberation.

Toward the end of the trial, I developed a severe migraine type headache which affected my ability as a juror to deliberate. I have had migraine type headaches for many years and this distracted me to the point that I was not as intent on presenting my side of the jury deliberations as I would have been had I not had a severe headache. Personally, I felt the jury award was inadequate but because of the way I felt I chose not to insist on a higher award but, instead, agreed with an early jury verdict.

Subsection (b) of Rule 606 of the Rules of Evidence governs this question and provides the following:

**Rule 606.  Competency of juror as witness.**

. . . .

(b) Inquiry into Validity of Verdict or Indictment.—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

■ The State in part opposes this issue on the ground the statement was hearsay and the juror "would be precluded from testifying" for these purposes. We are inclined to believe that the testimony would be offered, not for the truth thereof, but to show the juror's preconceptions regarding the character of Mr. Hurley and thus should not be excluded. We do believe, however, that the juror's affidavit should be excluded under the other mandate of the Rule regarding any "statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes."

■ The Defendants next contend as shown by their affidavit that the jury foreman was prejudiced against them by reason of the following conduct set out in their affidavit:

When the jury returned its verdict, we were both observing the jury and its foreman, Jerry Hughes. After the verdict was announced and the Judge polled the jury, the jury was dismissed. At the time the jury was dismissed and as it collectively rose to leave the jury box, we saw the jury foreman, Jerry Hughes, raise his hand in a gesture toward the attorney for the State and the engineer sitting there so as to indicate a hand wave and acknowledgment that he had "helped them" and was letting them know he had done as he was supposed to do by causing the jury to deliberate in their favor. The gesture which he demonstrated was a wave of the hand and a sort of salute and a nod of the head indicating that he had done what they had wanted done, that is, a lower verdict than should have been given.

We believe that this indicates a prejudice or unaccountable caprice on the part of the jury foreman and some unknown influence which has resulted in prejudice to our case and injustice being done. We believe that such conduct is reprehensible and a new trial should be granted.

While certainly an inference might be drawn from the foregoing in favor of the Defendants' contention, we believe something more is required than merely a nod of the head or a wave of the hand toward the counsel and engineer for the State. Given the solemn oath the jurors had taken regard-

ing their deliberations, we are constrained to hold that something more must be shown than set out in the Defendants' affidavit.

■ The State's argument assailed is the following sentence: "[W]e knew what was coming on this case, you know, Mr. Hurley, he made it clear what he was going to do."

We agree with counsel for the State that when the statement was taken in context, as hereinafter set out, the reference was to Mr. Hurley's "rolling the dice" and taking his chances as to the jury's award:

Why are we the only ones—and we knew what was coming on this case, you know, Mr. Hurley, he made it clear what he was going to do.

MR. BOYD: Judge, I object to that. I object to that.

THE COURT: Sustained.

MR. BOYD: Judge that's pretty—that's bad.

THE COURT: Well, sustained. Disregard the comment.

MR. HYMAN: Disregard it. We took a bunch of pictures, ladies and gentlemen. Where are theirs? Where are theirs? Oh, sure, they hired an airplane. That's this lawsuit. They came into this courtroom with one idea, roll those dice and see what they could get out of this lawsuit. That's what they're doing.

Moreover, as shown by the foregoing, counsel for the Defendants' objection was sustained and the jury told to disregard counsel's arguments.

■ By their last issue the Defendants complain of the Trial Court's failure to admit evidence that they had been advised in 1986 that the State had no plans to condemn the property in question. We agree with the Trial Court that this evidence has little, if any, relevancy to the issue in a condemnation case filed some five years later, and conclude the Trial Court did not abuse its discretion in excluding this evidence. Additionally, it does not appear that the evidence was ever preserved in the record and, consequently, cannot be considered on appeal.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of the judgment and costs below. Costs of appeal are adjudged against the Defendants.

FRANKS and SUSANO, JJ., concur.